2026 IL App (1st) 250899-U
No. 1-25-0899

SIXTH DIVISION
July 2, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL SCHENK and VANESSA SCHENK, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE CONDELL MEDICAL CENTER; ADVOCATE HEALTH AND HOSPITALS CORPORATION d/b/a ADVOCATE MEDICAL GROUP; ADVOCATE HEALTH PARTNERS, d/b/a ADVOCATE PHYSICIAN PARTNERS, a corporation; LAKE HEART SPECIALISTS HEART AND VASCULAR DISEASE, a corporation; VITUITY PHYSICAN PARTNERSHIP AND HEALTHCARE STAFFING SOLUTIONS, a corporation; BRYAN S. WIJAS, D.O.; BENJAMIN L. ROJAS, D.O.; BRIDGETTE A. HARRISON, R.N., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 24 L 000118  The Honorable Maire A. Dempsey, Judge Presiding. |
| Defendants | ) ) ) | |
| (Advocate Health and Hospitals Corporation d/b/a Advocate Condell Medical Center; Advocate Health and Hospitals Corporation d/b/a Advocate | ) ) ) ) | |

Medical Group; Advocate Health Partners, d/b/a )
Advocate Physician Partners, a corporation; Lake )
Heart Specialists Heart and Vascular Disease; and )
Benjamin L. Rojas, D.O., )
)
)
)
    Defendants-Appellants).

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order denying defendants-appellants' motion to transfer pursuant to the doctrine of *forum non conveniens* as we conclude that the circuit court did not abuse its discretion in weighing the applicable factors.

¶ 2    Defendants-appellants Advocate Condell Medical Center, Advocate Medical Group, and Advocate Physician Partners (collectively, Advocate), Lake Heart Specialists Heart and Vascular Disease, and Dr. Benjamin L. Rojas, appeal the denial of their motion to transfer this medical malpractice action from Cook County to Lake County under the doctrine of *forum non conveniens*. For the following reasons, we affirm the circuit court's denial of the motion to transfer.

¶ 3                                    BACKGROUND

¶ 4    In the early morning of January 1, 2023, Michael Schenk collapsed outside of a New Year's party in Libertyville, Illinois, due to a cardiac arrest. After his heart was restarted by emergency responders, he was promptly taken by ambulance to Advocate Condell Medical Center (Condell), also located in Libertyville, in Lake County.

¶ 5        Mr. Schenk was given two EKGs within an hour of his arrival at Condell, where he was evaluated and treated by the three individual defendants herein: Dr. Bryan S. Wijas, D.O., Nurse Bridgette A. Harrison and Dr. Benjamin Rojas, D.O. According to plaintiffs, those treaters failed to timely determine that Mr. Schenk had suffered an ST-segment elevation myocardial infarction, commonly referred to as a heart attack. Nine hours after his arrival at Condell, Mr. Schenk was transferred to the cardiac catheterization laboratory. Shortly thereafter, Dr. Rojas performed a thrombectomy and placed a stent in Mr. Schenk's heart.

¶ 6        Later that night, Mr. Schenk was transferred to Northwestern Memorial Hospital (Northwestern) in Chicago. Mr. Schenk remained at Northwestern for approximately three weeks, until January 25, 2023. There is no allegation of negligence with respect to Mr. Schenk's care at Northwestern.

¶ 7        On January 4, 2024, Mr. Schenk and his wife Vanessa Schenk (plaintiffs) filed a medical malpractice complaint in the circuit court of Cook County, alleging that Dr. Wijas, Dr. Rojas, and nurse Harrison negligently failed to timely diagnose and treat his heart attack. He alleges that due to this negligence, he suffered permanent heart damage, as well as respiratory and kidney failure.

¶ 8        The complaint further pleads that each of Advocate, Lake Heart Specialists Heart and Vascular Disease, and Vituity Physician Partnership and Healthcare are all liable, on an agency basis, for the negligence of Dr. Wijas, Dr. Rojas, and nurse Harrison. The complaint included a loss of consortium claim on behalf of Vanessa Schenk.

¶ 9        On May 31, 2024, Advocate filed a motion to transfer this case to Lake County under the doctrine of *forum non conveniens*. The motion was eventually joined by all other defendants. In the motion, Advocate emphasized that the alleged negligence took place exclusively in Lake

County at Condell, which is approximately 12 miles away from the Lake County Courthouse, compared to 40 miles away from the Daley Center in downtown Chicago. Advocate pointed out that all three named individual defendants, as well as both plaintiffs, reside in Lake County. Advocate argued that a trial in Cook County would be far more inconvenient to the defendants and potential witnesses than one in Lake County. Advocate claimed that defendants and witnesses would be "incredibly burdened" if they had to travel to the Daley Center. Notably, however, Advocate's motion did not identify any potential witnesses other than plaintiffs or defendants. Further, Advocate's motion did not attach any affidavits regarding the inconvenience of proceeding in Cook County.

¶ 10    Advocate's motion further averred that because the alleged negligence occurred in Lake County, the residents of Lake County had a legitimate interest in resolving such a local controversy, whereas Cook County has "absolutely no connection" to the case. Advocate also averred that "there is an immense difference in the litigation congestion" between Lake and Cook County, although it did not identify any supporting data. Advocate urged that forum shopping was the only reasonable explanation for the choice to file the case in Cook County, and that because Cook County is neither the location of the alleged negligence nor the plaintiffs' home, it would be "improper" to give deference to their choice to file in Cook County.

¶ 11    The parties subsequently served *forum non conveniens* discovery requests. The only defendants who responded to plaintiff's *forum non conveniens* interrogatories were Advocate and Nurse Harrison. In its responses, Advocate did not identify any potential witnesses other than plaintiffs and the three individual defendants: Dr. Wijas, Dr. Rojas, and Nurse Harrison. Advocate otherwise answered that remaining witnesses were yet to be determined. In response

4

to plaintiffs' interrogatories asking about the locations of medical facilities affiliated with Advocate, Advocate stated that it has "over 350 locations across multiple counties" and referred plaintiffs to its website for a list of all locations.

¶ 12      In her interrogatory responses, Nurse Harrison stated that if trial occurred in Lake County, "it will be easier to work at Highland Park Hospital before and after court" because she would "lose less time commuting" compared to a potential trial in Cook County.

¶ 13      In their interrogatory responses, plaintiffs submitted a list of potential witnesses, including more than 20 medical professionals from Northwestern involved in Mr. Schenk's treatment after he was transferred there from Condell. Plaintiffs averred that almost all of the treatment for his injuries occurred at Northwestern, in Cook County. Plaintiffs also identified 15 witnesses from Lake County, including the three individual defendants herein.

¶ 14      In March 2025, plaintiffs filed their response to the motion to transfer, in which they argued that the relevant *forum non conveniens* factors under Illinois case law did not warrant transfer. With that response, plaintiffs Michael and Vanessa Schenk submitted affidavits which averred that, although they resided in Lake County, a trial in Cook County would be convenient for both of them. Plaintiffs' response emphasized that 28 of the 52 witnesses identified by the parties resided in Cook County, and that Advocate operates a number of hospitals in Cook County. Plaintiff averred that of the 1,086 Illinois locations on Advocate's website, 667 are located in Cook County.

¶ 15      In arguing that comparative court congestion did not favor transfer, plaintiffs' response attached 2023 statistics from the Administrative Office of the Illinois Courts (AOIC) showing that the Cook County Law Division disposed of over 16,000 cases seeking damages of over $50,000, whereas only 600 such cases were disposed of in Lake County. The same statistics

showed 11,049 such cases remained open in Cook, while 896 such cases remained in Lake County. Plaintiffs otherwise argued that "court congestion alone is not dispositive."

¶ 16    On April 10th, 2025, the circuit court heard argument on the motion to transfer. The court concluded that, despite being "very close," the moving defendants had not met their burden of showing that the facts strongly favored transferring the case to Lake County.

¶ 17    In discussing the factors of the *forum non conveniens* analysis, the court acknowledged the plaintiffs and individual defendants both reside in Lake County, that the defendants work in Lake County, and that the allegedly negligent treatment at issue in the case occurred solely in Lake County. Recognizing that plaintiffs were foreign to Cook County, the court explained that their choice of forum does not get "as much" deference as is presumed in a typical case, but still gets "some" deference. In addition, when addressing the ease of access to evidence in the case, the court described the possibility of a jury visit to Condell as "extremely unlikely," given the availability of electronic medical records.

¶ 18    The court also stressed that many of the arguments made by the defendants at the hearing were not substantiated by information "attached or included in the exhibits" to their filed motion. Reiterating that the "burden is on the moving parties," the court found it could not say that the relevant factors "strongly favor [transfer] based on the information I have in the briefs."

¶ 19    On April 10, 2025, the trial court issued a written order denying defendants' motion to transfer "for the reasons stated on the record." Advocate, joined by Dr. Rojas and Lake Heart Specialists Heart and Vascular Disease, filed a petition for leave to appeal that decision pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which this court granted.

¶ 20                                          ANALYSIS

¶ 21    The sole issue before this court is whether the circuit court erred in denying Advocate's motion to transfer this case to Lake County under the doctrine of *forum non conveniens*.

¶ 22    As the parties acknowledge, a *forum non conveniens* decision lies within the sound discretion of the trial court. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003); *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441-42 (2006) ("A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion."). This court will therefore reverse a circuit court's decision "only if it can be shown that the court abused its discretion in balancing the relevant factors." *Evans v. Patel*, 2020 IL App (1st) 200258, ¶ 29. An abuse of discretion only occurs where "no reasonable person" would take the view adopted by the circuit court in balancing these factors. *Langenhorst*, 219 Ill. at 442 (citing *Dawdy*, 207 Ill. 2d at 177).

¶ 23    The inquiry on review is not whether we would have reached the same decision as the circuit court, but instead whether or not the circuit court "acted arbitrarily, without employing conscientious judgment, or *** exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *Pierce v. Cherukuri*, 2022 IL App (1st) 210339, ¶ 19 (quoting *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000)). Importantly, this court may use any basis in the record to affirm a circuit court's decision on a *forum non conveniens* motion, even if not relied upon by the circuit court. *Johnson v. Nash*, 2019 IL App (1st) 180840, ¶ 33 (quoting *Ruch v. Padgett*, 2015 IL App (1st) 142972, ¶ 40).

¶ 24    The Illinois venue statute provides: "every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in

that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2026). "If there exists more than one potential forum, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum." *Pierce*, 2022 IL App (1st) 210339, ¶ 21. The doctrine is based on considerations of fairness and effective administration of justice, allowing a trial court to decline jurisdiction when another forum "can better serve the convenience of the parties and the ends of justice" in a particular case. *Id.* (citing *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)).

¶ 25        When deciding a *forum non conveniens* motion to transfer, the circuit court must "consider all of the relevant factors, without emphasizing any one factor" to determine if the circumstances of the case strongly favor transfer. *Langenhorst*, 219 Ill. at 443; *Gridley v. State Farm Mut. Auto. Ins. Co.*, 217 Ill. 2d 158, 163 (2005) ("the balance of factors must strongly favor transfer of a case before a plaintiff can be deprived of his chosen forum").

¶ 26        Our supreme court has identified both private factors (focused on the "convenience of the litigants") and public factors (focused on the "administration of the courts") that must be balanced in *forum non conveniens* cases. *Id.* at 169-70. Private interest factors include "(1) convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other practical considerations that make a trial easy, expeditious, and inexpensive." *Evans*, 2020 IL App (1st) 200258, ¶ 32 (quoting *Fennell v. Illinois Cent. R. Co.*, 2012 IL 113812, ¶ 15). Public interest factors include "(1) the administrative difficulties caused when litigation is handled in congested venues; (2)

the unfairness of imposing jury duty upon residents of a community with no connection to the litigation; (3) and the interests of having local controversies decided locally." *Id*. (quoting *Fennell*, 2012 IL 113812, ¶ 16). A defendant seeking transfer bears the burden of showing that these factors strongly favor defendant's choice of forum. *Pierce*, 2022 IL App (1st) 210339, ¶ 22. "Unless the balance of factors strongly favor a defendant's choice of forum, the plaintiff's choice of forum should rarely be disturbed." *Langenhorst*, 219 Ill. 2d at 444.

¶ 27   Circuit courts must also consider the level of deference afforded to a plaintiff's choice of forum. *Fennell*, 2012 IL 113812, ¶ 18. A plaintiff's right to select a forum is significant, and ought not be disturbed unless the applicable interest factors strongly favor transfer to another forum. *Id*. The plaintiff's choice of forum is given "somewhat less deference" where it is not the site of the actions giving rise to the claim nor the county where plaintiff resides. *Langenhorst*, 219 Ill. 2d at 442-43. Furthermore, "while courts acknowledge that plaintiffs may forum shop, courts may not consider this practice in a *forum non conveniens* analysis." *Pierce*, 2022 IL App (1st) 210339, ¶ 23; *Evans*, 2020 IL App (1st) 200258, ¶ 33.

¶ 28   Applying these principles to the case at hand, we conclude that the circuit court did not abuse its discretion in deciding that the moving defendants did not meet their burden of showing the factors strongly favor transfer to Lake County. Based on what was presented to the court before its ruling, we cannot say that no reasonable person would agree with the court's decision to deny transfer. See *Langenhorst*, 219 Ill. 2d at 442; *Fennell*, 2012 IL 113812, ¶ 59.

¶ 29   The Court Gave Proper Deference to Plaintiff's Chosen Forum

¶ 30   Before we address the various interest factors, we note that defendants take issue with the amount of deference the circuit court afforded plaintiffs' choice of Cook County as their forum. They argue that this choice should be given "little," rather than "some" deference. In

9

acknowledging that plaintiffs are foreign to Cook County, the circuit court stated that they "don't get as much deference." This is consistent with our supreme court's holding that foreign plaintiffs' choice receives "*somewhat less*" deference under these circumstances. *Id*. at 442-43 (emphasis added). We cannot say that the circuit court's formulation of deference was error, or that it abused its discretion with respect to the level of deference it applied in this case. See, e.g., *Starr v. Presence Central and Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 20 (circuit court did not abuse discretion by affording plaintiff's choice of forum some deference "even though the Starrs do not reside in Cook County and the negligence they complain of is not alleged to have occurred there"); *Evan*s, 2020 IL App (2st) 200528, ¶ 37 (where plaintiff resided in Lake County, her choice to sue in Cook County was "owed some deference" even if the alleged negligence did not occur in Cook County). In any event, as discussed below, the court reasonably found that, on the limited record before it, the relevant factors did not weigh strongly in favor of transfer.

¶ 31    The Circuit Court Did Not Abuse its Discretion in Balancing the Private Interest Factors

¶ 32    The first private interest factor in a *forum non conveniens* analysis is the convenience of the parties. *Starr*, 2024 IL App (1st) 231120, ¶ 24. To show that this factor favors transfer, defendants must show that a Lake County trial would be more convenient for all of the parties to the case. *Langenhorst*, 219 Ill. 2d at 444. As the circuit court acknowledged, it is undisputed that all the parties reside in Lake County, including plaintiffs. Further, Dr. Wijas, Dr. Rojas, and Nurse Harrison work in Lake County. Nurse Harrison stated in her interrogatory answers that a Lake County trial would be more convenient for her than one in Cook County. These facts suggest that this factor weighs in favor of Lake County.

¶ 33    However, the circuit court could still reasonably conclude that the moving defendants did not show this factor *strongly* weigh in favor of transfer. Despite living in Lake County, both plaintiffs submitted affidavits that Cook County is convenient. Mr. Schenk averred that he spends a significant amount of his time conducting business in Cook County. More important, we find it significant that *none* of the defendants provided affidavits indicating that proceeding to trial in Cook County would be significantly more costly or burdensome for them than Lake County. There is no indication that either of the two physician defendants (neither of whom answered *forum non conveniens* discovery) would be significantly inconvenienced. Indeed, the only statement on the record from an individual defendant was from Nurse Harrison, who stated in response to interrogatories that it would be "easier" for her to work if the case is tried in Lake County, because she would "lose less time commuting." This statement from a single defendant indicates only relatively minor inconvenience; it certainly did not provide the circuit court sufficient proof that Lake County was a substantially more appropriate forum for all parties. See *Pierce*, 2022 IL App (1st) 210339, ¶ 32 (fact that one of the defendants would need to "travel 80 more miles to appear in Cook County" instead of McDonough County did not control, given that other defendants were residents in Cook County).

¶ 34    We note that in analogous decisions involving medical malpractice that allegedly occurred in adjacent counties, this court has declined to find an abuse of discretion in denying a transfer out of Cook County. See *Evans*, 2020 IL App (1st) 200528; *Starr*, 2024 IL App (1st) 231120, ¶ 30. While parties from a contiguous county may find a Cook County trial somewhat less convenient, the circuit court may still reasonably find that this does not weigh strongly enough to overcome the plaintiff's choice of forum. See *Evans*, 2020 IL App (1st) 200258, ¶ 41 (the first private interest factor did not strongly weigh in favor of Lake County, despite defendant

doctor's affidavit that Lake County would be more convenient because his work and family are closer to Lake County courthouse than the Daley Center); see also *Starr*, 2024 IL App (1st) 231120, ¶ 30 (affirming denial of a motion to transfer to Will County, despite affidavits from defendant nurses that they lived and worked in Will County and that a trial in Cook County would interfere with care of patients); *O'Brien v. Advanced Urology*, 2026 IL App (1st) 250608-U, ¶¶ 21-23 (declining to find the circuit court abused its discretion in denying a motion to transfer from Cook County to Will County, despite multiple defendant doctors submitting affidavits stating that a Will County trial would be more convenient for treating patients).

¶ 35     We reiterate that it was the moving defendants' burden to show that private interest factors *strongly* weighed in favor of transfer. *Langenhorst*, 219 Ill. 2d at 444. For whatever reason, defendants did not provide the circuit court with any affidavits or detailed explanation that Cook County would be a significantly less convenient forum than Lake County. Given the record before us, we cannot say that the circuit court abused its discretion by finding that this factor did not strongly favor transfer.

¶ 36     We continue to the next private interest factor, "the relative ease of access to sources of documentary evidence." *Evans*, 2020 IL App (1st) 200528, ¶ 43. Defendants claim that the circuit court erred by failing to address this factor. However, defendants' argument on this point was largely conclusory. In the brief in support of the motion to transfer, the entirety of the argument on this point was as follows:

> "Second, evidence is more accessible in Lake County. This case
> revolves around the care and treatment of Michael Schenk while at
> Advocate Condell, located in Libertyville, Lake County. Records,

evidence, and relevant information pertaining to this treatment will be maintained at Advocate Condell. Should a Cook County jury need to make inspections of the site or any equipment, it would be nearly impossible, and most certainly inconveniencing, to inspect evidence located in Lake County. It would certainly weigh in favor of transfer to Lake County should this issue arise given the proximity of Advocate Condell to the Lake County Courthouse."

¶ 37    At the hearing on the motion to transfer, the circuit court acknowledged this point, albeit briefly, in stating that it is "extremely unlikely that any jury is going to need to go to the hospital. I don't even think the parties are going to have to go to the hospital, unless there's some EMR [electronic medical records] issue or something like that." We find no error in these remarks. There can be little doubt that most, if not all, documentary evidence will be equally accessible whether trial occurs in Cook County or Lake County. See *Pierce*, 2022 IL App (1st) 210339, ¶ 35 (where "any documentary evidence, such as medical records, are now produced in an electronic format that can be easily distributed to the parties" in either county, "this fact does not weigh in favor of transfer"). Defendants do not articulate any plausible reason why documentary evidence would be any less accessible in Cook County. Indeed, defendants already attached relevant Condell medical records to their brief to the circuit court. Thus, although the trial court did not discuss this factor in any detail in the course of its ruling, we find no basis in the record to conclude that the circuit court erred with respect to this factor.

¶ 38    The next private interest factor is "availability of compulsory process to secure attendance of unwilling witnesses." *Evans*, 2020 IL App (1st) 200528, ¶ 44. Defendants concede that this factor is neutral, as both Lake County and Cook County courts are capable of securing the

attendance of unwilling witnesses. We agree. "Where the transfer to some other forum does not solve the compulsory attendance problem, the compulsory process factor is regarded as being neutral, and not strongly favoring transfer." *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 278 (2011). Here, this factor is neutral and cannot strongly favor transfer.

¶ 39    "[T]he cost to obtain attendance of the willing witnesses" is the fourth private interest factor. *Evans*, 2020 IL App (1st) 200528, ¶ 45. Defendants claim that the circuit court abused its discretion by not addressing this factor. Although the trial court did not explicitly identify this factor, it acknowledged the basis for defendants' arguments on this point: that the treating medical professionals accused of negligence are based in Lake County. We again note that none of them submitted affidavits detailing any hardship in attending trial in Cook County. Indeed, defendants do not articulate how it would be unduly costly for *any* witnesses to attend trial in Cook County, apart from noting the distance from Condell to either the Lake County courthouse or the Daley Center. It is undisputed that Condell is approximately 28 miles closer to the Lake County courthouse than to the Daley Center, but we decline to find that the circuit court abused its discretion by not finding this fact strongly favored transfer. See *Foster*, 2016 IL App (5th) 150055, ¶ 36 (42-mile distance between courthouses was a "relatively short distance between the chosen forum and alternate forum"). To the extent any party sought to call a witness from outside Illinois, this factor is likely neutral, given the relative closeness of Lake and Cook County. See *Evans*, 2020, IL App (1st) 200528, ¶ 45 (finding this factor neutral, where "any witness flown in to testify would have to travel to one of the airports located in Chicago" whether trial took place in Lake or Cook County). We also note that plaintiffs identified a number of witnesses who are medical professionals at Northwestern, located in Cook County, who presumably could attend proceedings in Cook County just as easily as Lake

County. In short, we cannot say the trial court erred in declining to find that this factor strongly favored transfer.

¶ 40    Defendants also claim that the circuit court abused its discretion with respect to the fifth private interest factor, "the possibility of viewing the premises, if appropriate." *Id*. at ¶ 32. Our supreme court has instructed that "This convenience factor is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate." (Emphasis in original). *Dawdy*, 207 Ill. 2d at 178. Notably, our supreme court's formulation of this factor referenced the prospect of viewing the site of an accident, not the site of alleged medical negligence. See *id*. at 179 (" 'the possibility of having a jury view the scene of an accident is an important consideration in ruling upon a *forum non conveniens* motion.' " (quoting *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80 (1983)). This court has since recognized that " 'as a practical matter, a viewing of the site is rarely or never called for in a medical negligence case.' " *Starr*, 2024 IL App (1st) 231120, ¶ 47. Nonetheless, "[w]hile rarely applicable in medical malpractice cases, courts still weigh whether a view may be appropriate." *Lutzenkirchen v. OSF Healthcare System*, 2025 IL App (1st) 250028, ¶ 44 (citing *Hackl v. Advocate Health & Hospitals Corp*., 382 Ill. App. 3d 442, 452 (2008)).

¶ 41    Defendants' primary claim of error in regard to this factor is that the circuit court only considered the necessity of a site visit, rather than the possibility of one. We acknowledge the trial court's remarks that it was "extremely unlikely that any jury is going to need to go to the hospital" referred to the necessity of a site visit, rather than whether such a visit was possible or appropriate. Yet, even assuming the trial court should have framed this factor as a question of the possibility of site visit rather than necessity, we do not find any basis to find an abuse of

15

discretion. We reiterate that our decision to affirm the circuit court's decision can be based on any evidence in the record, regardless of the court's stated reasoning. See *Johnson*, 2019 IL App (1st) 180840, ¶ 33. Nothing in the record or defendants' briefing suggests that a jury visit to Condell would ever be appropriate at a trial of this medical malpractice action. We thus agree with the circuit court that this factor is relatively insignificant and certainly does not strongly favor transfer from plaintiffs' chosen forum.

¶ 42    The final private interest factor consists of "other practical considerations, making trial easy, expeditious, and less expensive." *Evans*, 2020 IL App (1st) 200528, ¶ 47. Defendants direct our attention to this court's recent decision in *Lutzenkirchen*, which indicated that "travel, traffic, convenience, and witness availability," including the ability of medical professionals to treat patients without disruption, are all appropriate considerations under this factor. 2025 IL App (1st) 250028, ¶ 49 (reversing denial of motion to transfer medical malpractice action), PLA allowed March 25, 2026, no. 132601. Defendants rely on *Lutzenkirchen* to argue that such considerations favor transfer here. However, the circumstances of *Lutzenkirchen* (arising from alleged medical malpractice in Rockford, Illinois) are very different from the case at bar. Whereas the instant dispute involves a choice between adjacent counties, *Lutzenkirchen* concerned a motion to transfer from Cook County to Winnebago County, whose courthouse is approximately 88 miles away from the Daley Center. That is roughly twice the distance between the Daley Center and the Lake County courthouse in Waukegan. Because of this geographic disparity, the travel times and costs for parties and witnesses in *Lutzenkirchen* were much more significant than in the present case, where there is a relatively short distance between the two forums at issue. See *Foster*, 2016 IL App (5th) 150055, ¶ 36 ("relatively short distance between the chosen forum and the

alternate forum substantially reduces the burden of travel and makes it unlikely" that chosen forum is more costly or inconvenient). Further, in *Lutzenkirchen* the motion to transfer was supported by affidavits from three individual defendants (two physicians and a certified registered nurse anesthetist) attesting that trial in Cook County would be significantly more disruptive than proceeding in Winnebago County. 2025 IL App (1st) 250028, ¶ 6. Thus, the final private interest factor favored transfer because defendants "would face disruption in their medical practices if required to appear in court." *Id*. ¶ 49. Here, the moving defendants offered no such affidavits. See *Seilheimer v. Olsen*, 2025 IL App 240418, ¶ 46 (in affirming denial of motion to transfer from Cook to Lake County, emphasizing that defendant offered no affidavits that any witness would be inconvenienced by Cook County). Although the fact that Lake County and Cook County are contiguous is not dispositive, their proximity affects the calculation of whether defendants met their burden to show that private factors strongly favor transfer. See *id*. ¶ 47 (Where defendant relied on the fact that treating physicians worked in Lake County without providing further details, "it feels safe to surmise that the difference in their travel time to the Lake County courthouse versus the Daley Center would be measured in minutes, not hours – again, a 'battle over the minutiae.' ") (quoting *Langenhorst*, 219 Ill. 2d at 450)).

¶ 43    In sum, some of the private interest factors might slightly favor transfer to Lake County, while others are neutral. Given the lack of supporting affidavits or additional facts before the circuit court, we cannot say the circuit court abused its discretion in determining these factors did not strongly weigh in favor of transfer.

¶ 44            The Court Did Not Abuse Its Discretion in Weighing the Public Interest Factors

¶ 45    We continue our analysis with the three public interest factors, starting with the first, "the administrative difficulties flowing from court congestion." *Evans*, 2020 IL App (1st) 200528, ¶ 49. It is important to note that court congestion is "a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *First Nat'l Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002). With respect to this factor, defendants point to 2023 statistics regarding the caseloads of Cook and Lake County. According to the AOIC's annual report, in 2023, Cook County saw over 161,000 new civil cases filed (including over 13,000 seeking damages in excess of $50,000), compared to just over 13,000 total new civil cases in Lake County (only 900 of which sought more than $50,000 in damages).  See https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/2e8fe39f-d040-47ee-a2b5-d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf Additionally, the number of civil cases increased to over 145,000 in Cook County, while the number of Lake County civil cases decreased to just under 10,000. Citing *Lutzenkirchen*, (which discussed the difference in case load between Cook and Winnebago County), defendants argue that the difference in case load alone means this factor weighs strongly in favor of transfer. 2025 IL App (1st) 250028, ¶¶ 56-58.

¶ 46    Notably, defendants did not include these statistics in their circuit court brief supporting the motion to transfer. In that brief, defendants merely stated "there is an immense difference in the litigation congestion between the Cook County and Lake County docket" without any reference to particular statistics. Rather, it was plaintiffs who attached the 2023 AOIC report as an exhibit to their opposition to the motion to transfer, to suggest that Cook County efficiently disposed of cases.

¶ 47    During the hearing, defendants' argument on this factor consisted of the following:

"I think there's little to no doubt that both Cook County and Lake County have congestion. However, Plaintiff claims in his response that Cook County closed 16,184 cases in 2023, which is quite good, whereas Lake County only closed 600. However, at the beginning of 2023, Lake County only had 555 cases in progress, whereas Cook County had 13,591. So that's comparing apples to oranges when Plaintiff claims that Lake County is more congested than Cook County."

¶ 48 That is, defendants' counsel correctly pointed out that Cook County, unsurprisingly, has a much larger case load than Lake County. However, "the proper consideration of this factor is not the number of cases alone but the efficiency with which the court handles those cases." *Seilheimer v. Olsen*, 2025 IL App (1st) 240418, ¶ 67; see also *Starr*, 2024 IL App (1st) 231120, ¶ 63 (although Cook County had thousands more pending law division cases than Will County, "These number alone do not signify anything, however, as Cook County is more populous and employs more judges.") Although Cook County "has many more cases [than Lake County], it also has many more *judges*." (Emphasis in original.) *Seilheimer*, 2025 IL App (1st) 240418, ¶ 66. We note that website for the Circuit Court of Cook County lists 48 judges in the Law Division of Cook County. https://www.cookcountycourtil.gov/judges. In contrast, the website for the Nineteenth Judicial Circuit Court (which includes Lake County) lists 12 judges for the entire Civil Division, which encompasses law, chancery, arbitration, foreclosure, and small claims. https://19thcircuitcourt.state.il.us/1300/Courtroom-Assignments.

¶ 49 Our court has recently declined to find the court congestion factor favored transfer from Cook County to Lake County. *Seilheimer*, 2025 IL App (1st) 240418, ¶¶ 66-68. And in this

case, defense counsel acknowledged at the hearing that "both Cook County and Lake County have congestion."

¶ 50    We reiterate that it is the defendant's burden to demonstrate that the relevant factors strongly favor transfer. *Langenhorst*, 219 Ill. 2d at 444. Based on the information and arguments before the circuit court regarding the relative court congestion in Cook and Lake County, the court reasonably declined to find that this factor strongly favored transfer.

¶ 51    We turn to the public interest factor of "the interest in having local controversies decided locally." *Evans*, 2020 IL App (1st) 200528, ¶ 54. We "recognize that our supreme court has held that the location of the injury giving rise to the litigation is the most significant factor in giving any county a local interest." *Id.* (citing *Dawdy*, 207 Ill. 2d at 183).

¶ 52    On this factor, defendants refer us to decisions favoring transfer where the alleged medical negligence occurred in another county and where the medical defendants primarily or exclusively practiced in that other county. See *Lutzenkirchen* 2025 IL App (1st) 250028, ¶¶ 64-69 (transfer warranted where the "large majority of defendants practice exclusively in Winnebago County," where the alleged negligence occurred); *Gundlach v. Lind*, 353 Ill. App. 3d 677, 683 (2004) (finding this factor strongly favored transfer where the alleged negligence occurred at a hospital in McHenry and so "this is a local controversy that would be of interest to the citizens of McHenry County who rely on defendants for their medical treatment, while the citizens of Cook County have no interest in this litigation").

¶ 53    We agree with defendants that this factor favors Lake County, the site of the alleged medical negligence at Condell. Nonetheless, we do not find that the circuit court abused its discretion in declining to find that this factor strongly warranted transfer, as Cook County still has some interest in the matter. This court has recognized that Cook County has some interest

in claims against medical providers who treat Cook County residents, even if the alleged negligence was not committed in Cook County. See *Pierce*, 2022 IL App (1st) 210339, ¶¶ 51-52 (although negligence occurred in other counties, since defendants "have offered medical care to Cook County residents, Cook County has an interest in the litigation."); *Cain v. Chatterji*, 2025 IL App (1st) 231744-U, ¶¶ 67-68 (fact that defendant physician admitted that he and other defendants treated Cook County residents gave Cook County "some interest in the litigation, even if the alleged negligence did not occur there").

¶ 54    Condell is affiliated with defendant Advocate Medical Group, which has a considerable presence in Cook County. Advocate does not dispute that it operates numerous medical facilities in Cook County. This court has found Advocate's presence in this county creates some interest for Cook County, even in cases where the alleged negligence takes place elsewhere. See *Hackl v. Advocate Health & Hosps. Corp.*, 382 Ill. App. 3d 422, 452 (2008) ("Cook County and its residents also have an interest in Hackl's case because defendant Advocate is a healthcare provider in Cook County and the greater Chicago area"); *Prouty v. Advocate Health & Hospitals Corp.*, 382 Ill App. 3d 490, 497 (2004)  ("Any county to which Advocate provides service has an interest in the outcome of the case.").

¶ 55    We recognize that the medical treatment giving rise to this claim took place outside of Cook County, and the individual defendants are residents of Lake County. Though Cook County does not have a very strong interest in this particular case, Advocate Medical Group's strong presence in Cook County thus avails its residents of some interest. We do not mean to suggest that Cook County's interest is stronger than Lake County's interest, but it is enough for us to say that the circuit court did not abuse its discretion in finding that this factor did not strongly weigh in favor of transfer.

21

¶ 56    The same logic applies to the remaining public interest factor, "the unfairness of burdening citizens in an unrelated forum with jury duty." *Evans*, 2020 IL App (1st) 200528, ¶ 50. Because we have concluded that Cook County has some interest in resolving this dispute, we cannot say that it is an unrelated forum and its citizens are being unfairly burdened with jury duty. See *Hackl*, 382 Ill. App. 3d at 452 (because Cook County had a genuine interest in medical malpractice claims against defendants who are healthcare providers in Cook County, "it is not unfair to impose the expense of trial and burden of jury duty on Cook County residents").

¶ 57    We readily acknowledge that Lake County has a stronger factual connection to this case. However, we keep in mind that plaintiff's choice of forum is still entitled to some deference, and it remained defendants' burden to show the relevant factors strongly favored transfer. Our inquiry on review is "not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the [circuit] court acted in a way that no reasonable person would." *Susman v. North Star Trust Co.*, 2015 IL App (1st) 142789 (quoting *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009)).

¶ 58    We recognize that the circuit court did not individually address each of the applicable private and public *forum non conveniens* factors during the hearing on defendant's motion to transfer. However, our role is to assess whether the circuit court's ultimate conclusion was unreasonable on the record before us, regardless of the stated reasoning. See *Rodriguez v. Sherriff's Merit Com'n of Kane County*, 218 Ill. 2d 342, 357 (2006) ("The reasons given for a judgment or order are not material if the judgment or order itself is correct."). We cannot say that the circuit court reached a decision that was unreasonable, especially on the limited record presented in support of defendants' motion.

¶ 59                                                    CONCLUSION

¶ 60        The circuit court could reasonably conclude that defendants failed to meet their burden to show the applicable factors strongly weigh in favor of transfer. We therefore conclude that the circuit court did not abuse its discretion, and we affirm the denial of defendants' motion to transfer.

¶ 61        For the foregoing reasons, the judgment of Circuit Court of Cook County is affirmed.

¶ 62        Affirmed.